**Jimmie Ann TAYLOR, Ladell Vasicek, Noma Chriss, Martha Cole, and Sara M. McCarthy, Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–5136.

United States Court of Appeals, Federal Circuit.

Sept. 12, 2002.

Genice A.G. Rabe, of Dallas, TX, argued for plaintiffs-appellants.

Patricia M. McCarthy, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Robert D. McCallum, Jr., Assistant Attorney General; and David M. Cohen, Director. Of counsel on the brief was Captain J. Ricou Heaton, USAF, Trial Attorney, Employment Litigation Branch, Air Force Legal Services Agency, of Washington, DC.

Before MAYER, Chief Judge, RADER, and SCHALL Circuit Judges.

RADER, Circuit Judge.

Jimmie Ann Taylor, Ladell Vasicek, Noma Chriss, Martha Cole, and Sara M. McCarthy (collectively retirees) appeal the United States Court of Federal Claims' decision dismissing their appeal for lack of jurisdiction. *Taylor v. United States*, No. 97–946 C (Fed.Cl.2001). Because the non-appropriated funds doctrine bars the Court of Federal Claims' jurisdiction, this court affirms.

I.

The retirees are former employees of the Army & Air Force Exchange Service (AAFES), which hired them in the years 1966–68. The Secretaries of the Army and the Air Force created and administered AAFES under the general authority granted by 10 U.S.C. §§ 3012 and 8012 (1988, 1994). Like other exchanges, AAFES is a non-appropriated funds instrumentality (NAFI). As a NAFI, AAFES's " 'monies do not come from congressional appropriations but rather primarily from [its] own activities, services, and product sales.' " *El–Sheikh v. United States*, 177 F.3d 1321, 1322 (Fed.Cir.1999) (quoting *Cosme Nieves v. Deshler*, 786 F.2d 445, 446 (1st Cir.1986)). Hence, the government does not assume AAFES's obligations in the manner that it assumes the

obligations of appropriated funds agencies. *Standard Oil Co. v. Johnson,* 316 U.S. 481, 485, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942).

As part of the military downsizing of the 1990s, Congress required AAFES to satisfy certain military drawdowns. To minimize involuntary separations, AAFES solicited volunteers for separation. Retirees responded to AAFES's solicitations by each requesting separation for early retirement. Those retirements became effective between January 15, 1993, and March 31, 1996. During that period, 5 U.S.C. § 5597 provided that the Secretary of Defense could provide voluntary separation incentive pay of up to $25,000 to "encourage eligible employees to separate from service voluntarily." 5 U.S.C. § 5597 (1988, 1994). AAFES paid each retiree four (4) weeks of severance pay, but refused to provide them separation pay under § 5597.

On September 17, 1996, retirees sued the government for separation pay in the United States District Court for the Northern District of Texas. In that suit, retirees complained, *inter alia,* that the government violated § 5597 by denying them separation pay. Because retirees each sought more than $10,000, the district court determined that the United States Court of Federal Claims had exclusive jurisdiction over retirees' § 5597 claim under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994). *Taylor v. Perry,* No. 3–96–CV–2625–BD, slip op. at 6 (N.D.Tex. Sept. 24, 1997). The district court severed retirees' § 5597 claim and transferred it to the Court of Federal Claims under 28 U.S.C. § 1631 (1994). The district court stayed retirees' other claims pending the Court of Federal Claims' resolution of the § 5597 claim.

After transfer, the Court of Federal claims stayed all merits-related discovery pending resolution of its own jurisdiction. After considering that issue fully, the Court of Federal Claims determined in a well-reasoned opinion that it lacked jurisdiction and dismissed. *Taylor v. United States,* No. 97–946 C (Fed. Cl. June 18, 2001). On July 3, 2001, the Court of Federal Claims denied retirees' various motions for reconsideration. *Taylor v. United States,* No. 97–946 C (Fed.Cl. July 3, 2001). Retirees have appealed the Court of Federal Claims' holding of no jurisdiction, and its denial of certain discovery requests. This court has jurisdiction under 28 U.S.C. § 1295(a)(3) (2000).

## II.

■ This court reviews without deference the Court of Federal Claims' determination on its jurisdiction. *Hanlin v. United States,* 214 F.3d 1319, 1321 (Fed.Cir. 2000); *Shearin v. United States,* 992 F.2d 1195, 1195 (Fed.Cir.1993). Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence. *Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942). This court upholds the Court of Federal Claims' evidentiary rulings absent an abuse of discretion. *Cf. National Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1197, 37 USPQ2d 1685, 1694 (Fed.Cir.1996) (stating that intrusions into a district court's trial management are rarely appropriate on appeal.).

■ The Tucker Act is the primary statute conferring jurisdiction on the Court of Federal Claims:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive depart-

ment, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2000). "The jurisdictional grant in the Tucker Act is limited by the requirement that judgments awarded by the Court of Federal Claims must be paid out of appropriated funds." *Furash & Co. v. United States*, 252 F.3d 1336, 1339 (Fed.Cir.2001) (citing 28 U.S.C. § 2517 (2000)). Hence, the Tucker Act generally does not provide the Court of Federal Claims with jurisdiction over claims against NAFIs such as AAFES. *El–Sheikh v. United States*, 177 F.3d 1321, 1324 (Fed.Cir.1999) ("The general rule is that the Court of Federal Claims lacks jurisdiction to grant judgment against the United States on a claim against a NAFI because the United States has not assumed the financial obligations of those entities by appropriating funds to them."). This requirement is known as the non-appropriated funds doctrine.*

■ A clear and express statute, however, may waive sovereign immunity. *Cf. Miller v. French*, 530 U.S. 327, 336, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) ("[W]here Congress has made its intent clear, '[courts] must give effect to that intent.' ") (quoting *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 215, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962)). This court, for example, found such a waiver in *El–Sheikh*, 177 F.3d 1321 (Fed.Cir.1999). Mr. El–Sheikh was employed by a NAFI and alleged government violation of the Fair Labor Standards Act. The Court of Federal Claims dismissed for lack of jurisdiction, finding that the non-appropriated funds

doctrine applied. This court reversed because the Fair Labor Standards Act manifested a clear and express waiver of sovereign immunity. The non-appropriated funds doctrine did not apply because the Fair Labor Standards Act expressly included NAFI employees within its scope, 29 U.S.C. § 203(e)(2), while also granting those employees the right to sue for violation of the Act, 29 U.S.C. § 216(b). Hence, the Tucker Act provided the Court of Federal Claims jurisdiction over Mr. El–Sheikh's claim "against the United States founded ... upon ... [an] Act of Congress," 28 U.S.C. § 1491(a)(1). *El–Sheikh*, 177 F.3d at 1324.

■ Here, retirees argue that their situation is similar to that in *El–Sheikh*. Specifically, retirees contend that § 5597 waives sovereign immunity. Section 5597 states:

> In order to avoid or minimize the need for involuntary separations due to a reduction in force, base closure, reorganization, transfer of function, workforce restructuring (to meet mission needs, achieve one or more strength reductions, correct skill imbalances, or reduce the number of high-grade, managerial, or supervisory positions), or other similar action affecting 1 or more defense agencies, the Secretary [of Defense] shall establish a program under which separate pay may be offered to encourage eligible employees to separate from service voluntarily (whether by retirement or resignation).

5 U.S.C. § 5597(b) (2000). Retirees contend that this language authorizes NAFI separation pay from appropriated funds.

---

* Although Congress has amended the Tucker Act to encompass contract claims against AAFES and certain other NAFIs, that statutory exception to the non-appropriated funds doctrine does not apply here as retirees concede their claims are not based on a contract.

Because this court construes strictly the "limitations and conditions upon which the Government [has] consente[d] to be sued" and does not imply exceptions, *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981), (*quoting Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)), this court cannot agree.

■ Unlike the Fair Labor Standards Act at issue in *El–Sheikh,* § 5597 does not extend expressly to NAFI employees. Even if § 5597 impliedly covered NAFI employees, an issue that this court does not decide, that section would not obligate appropriated funds as the source of those separation payments. Rather, Title 5 provides separately that "separation pay shall be paid by an agency out of any funds or appropriations available for salaries and expenses of such agency." 5 U.S.C. § 5597 note, Pub.L. No. 102–484 § 4436(b), 106 Stat. 2315, 2360, 2723–24 (1994). This renders unavailing all of retirees' arguments.

More specifically, AAFES's funds for salaries and expenses do not derive from congressional appropriations. *Army & Air Force Exch. Serv. v. Sheehan,* 456 U.S. 728, 729 n. 1, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982) (citing to what are now 10 U.S.C. §§ 4779(b) and 9779(b)). They flow, rather, from the AAFES's "own activities, services, and product sales." *El–Sheikh,* 177 F.3d at 1322 (quoting *Cosme Nieves,* 786 F.2d at 446). In sum, § 5597 imposes on AAFES at most an unfunded obligation insufficient to waive sovereign immunity from breach of that obligation. *See Interdent Corp. v. United States,* 203 Ct.Cl. 296, 488 F.2d 1011, 1013 (1973).

The Department of Defense recognized these funding source constraints in its initial implementation of § 5597. Although the Department of Defense provided for NAFI separation pay plans in that implementation, it recognized that "[i]ncentives for NAF employees must be paid from nonappropriated funds." Dep't of Def. Memorandum regarding civilian separation pay (April 22, 1993). Later, in an unexplained policy reversal, the Department of Defense allowed NAFIs to fund realignment and closure costs from appropriated funds. *See, e.g.,* DoD Instr. 1015.10. Retirees argue that the Department of Defense's modified position manifests a waiver of sovereign immunity. This court cannot agree.

To reiterate, § 5597 does not authorize appropriated funds for NAFI separation pay. Retirees, moreover, cite to no other statutory authority capable of supporting the decision of the Department of Defense to allow NAFI separation payments from appropriated funds. And without express congressional authorization, that action of the Department of Defense is irrelevant to the jurisdictional issue; only an express statute may waive the sovereign immunity of the United States. *Cf. United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) ("We should also have in mind that the Act waives the immunity of the United States and that . . . we should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended.") (citations omitted). In sum, the Court of Federal Claims held correctly that it had no jurisdiction over this case.

Retirees argue also that the district court abused its discretion by refusing discovery about AAFES's receipt of appropriated funds for separation pay. The issue, however, is not whether the Department of

Defense allowed AAFES appropriated funds for separation pay. Jurisdiction hinges, rather, on whether Congress authorized provision of those funds, a matter of public record. The Court of Federal Claims did not abuse its discretion by denying discovery on this issue.

## CONCLUSION

Because § 5597 does not authorize appropriated funds for NAFI separation pay, the Court of Federal Claims correctly held that the non-appropriated funds doctrine barred its jurisdiction over retirees' claims. This court, therefore, *affirms.*

*AFFIRMED.*