NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**THOMAS G. LANDRETH,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2019-2260

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-00476-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: January 10, 2020

---

THOMAS G. LANDRETH, Hoquiam, WA, pro se.

ISAAC B. ROSENBERG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM.

---

Before LOURIE, MOORE, and REYNA, *Circuit Judges.*

PER CURIAM.

Thomas Landreth appeals from the decision of the United States Court of Federal Claims ("the Claims Court") dismissing his complaint for lack of subject matter jurisdiction. *See Landreth v. United States*, No. 1:18-cv-00476, 144 Fed. Cl. 52, 54–55 (July 24, 2019) ("*Decision*"). Because the Claims Court did not err in its dismissal of Landreth's complaint, we *affirm*.

## BACKGROUND

The Quinault Indian Nation ("the Tribe") is a federally recognized tribe in Washington state. The Quinault Reservation is located on the Olympic Peninsula and was established in 1855 by the Treaty of Olympia.

Thomas Landreth is a resident of Washington. In his complaint, Landreth represented that he owns private property within Olympic National Park that abuts Lake Quinault, which is also located on the Olympic Peninsula. Landreth alleged that "for more than a decade, the Quinault Indian Tribe has increasingly asserted jurisdiction and control over this navigable waterway, forcing out the public and non-tribal property owners," and that since April 2013, the Tribe has "restricted all uses of the lake for non-tribal members." *See* Amended Complaint, *Landreth v. United States*, No. 1:18-cv-00476 (Fed. Cl. Oct. 19, 2018), ECF No. 12 ("*Complaint*").

After a series of dismissals from state and federal courts in Washington, Landreth filed a complaint in the Claims Court naming the United States as defendant. Landreth's complaint includes several causes of action, including deprivation of Landreth's property rights by various trespassory actions taken by the Quinault Tribe, conversion of parts of Lake Quinault by the Tribe, tortious interference with property, private nuisance, violations of the U.S. Constitution, and violations of various federal and Washington state laws. *Complaint* at 28–40.

Landreth's complaint relies on three bases for Claims Court jurisdiction: the Tucker Act, 28 U.S.C. § 1491(a); the Indian Tucker Act, 28 U.S.C. § 1505; and the Act of March 3, 1891, ch. 538, 26 Stat. 851 (1891) ("the 1891 Act"). *Complaint* at 3–4. Landreth's complaint requests various forms of declaratory and injunctive relief, including a declaration that the Tribe has no rights to the lakebed or waters of Lake Quinault and an injunction prohibiting the Tribe from restricting public access to the lake. *Id.* at 41–42. Landreth also requests "monetary damages related to the loss of use of legally obtained real property and the trespass by the Quinault Indian Tribe." *Id.* at 42.

The government filed a motion to dismiss Landreth's complaint under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims for lack of subject matter jurisdiction, which the Claims Court granted. First, the court determined that it lacked jurisdiction under the Tucker Act and the Indian Tucker Act because Landreth's claims are more properly against the Tribe, not the United States. *Decision*, 144 Fed. Cl. at 55. Second, the court determined that it lacked jurisdiction over Landreth's requests for declaratory relief because the Claims Court lacks authority to issue declaratory judgments. *Id.* Finally, with respect to the 1891 Act, the court determined that the Act prohibits claims "for any depredation which shall be committed after the passage thereof." *Id.* (quoting 26 Stat. 851, 852).

Landreth appealed. We have appellate jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review dismissals by the Claims Court for lack of jurisdiction *de novo*. *Frazer v. United States*, 288 F.3d 1347, 1351 (Fed. Cir. 2012). A plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002). While *pro se* plaintiffs are entitled to a liberal

construction of their complaint, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the leniency afforded *pro se* litigants with respect to mere formalities does not relieve them of jurisdictional requirements, *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

The Tucker Act provides the Claims Court with jurisdiction over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491.  To pursue a claim under the Tucker Act, a plaintiff must identify and plead a "substantive right for money damages against the United States separate from the Tucker Act." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004).

On appeal, Landreth argues that his claims are based on the Takings Clause of the Fifth Amendment and that the Claims Court has jurisdiction over them under the Tucker Act.  Landreth appears to argue that his claims are against the United States for purposes of Tucker Act jurisdiction because the United States is a trustee for the Tribe under the Treaty of Olympia.  Thus, in Landreth's view, the government is responsible for acts taken by the Tribe.

The government responds that Landreth's complaint fails to allege a taking at all, and to the extent that it may be interpreted to do so, the complaint fails to allege a claim against the United States as required by the Tucker Act. At most, the government argues, the complaint alleges a deprivation of Landreth's property rights by the Tribe alone.

We agree with the government that Landreth's complaint fails to allege a taking by the United States sufficient to confer on the Claims Court jurisdiction under the Tucker Act.  While it is "undisputed that the Takings Clause of the Fifth Amendment is a money-mandating

source for purposes of Tucker Act jurisdiction," *Jan's Helicopter Service, Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008), Landreth's complaint fails to mention the Takings Clause or the Fifth Amendment at all. Further, every act described in the complaint is alleged to have been committed by the Tribe, not by the United States, and the complaint fails to allege facts sufficient to establish responsibility of the United States for acts taken by the Tribe. While acts of third parties can sometimes give rise to viable takings claims against the United States, *see A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1153 (Fed. Cir. 2014), Landreth's complaint does not allege any facts plausibly establishing an agency relationship between the Quinault Tribe and the United States, or that the United States induced the Tribe to act. And while there exists a "general trust relationship between the United States and the Indian people," *United States v. Mitchell*, 463 U.S. 206, 225 (1983), Landreth has not demonstrated why the United States, as trustee, should be liable for the alleged wrongful acts of its beneficiary.

In any event, as noted by the government, even if Landreth's complaint alleges a takings claim, it cannot succeed. The complaint is predicated on alleged wrongful acts of the Tribe. However, "[a] takings claim cannot be found on the theory that the United States has taken unlawful action." *Moody v. United States*, 931 F.3d 1136, 1142 (Fed. Cir. 2019). Therefore, even if the United States were responsible for the alleged wrongful acts of the Tribe as Landreth argues, the complaint still fails to allege a viable takings claim because "complaints about the wrongfulness of [] government action are [] not properly presented in the context of a takings claim." *Id.* (internal quotation omitted).

The Claims Court also properly determined that it lacks jurisdiction over Landreth's other claims. First, to the extent that Landreth characterizes the Treaty of 1855 as a contract between the United States and the Tribe, it

cannot provide a basis for the Tucker Act's contract-based jurisdiction at least because Landreth has not alleged that he was a party to the alleged contract or in privity with a party that was. Second, Landreth argues that the Indian Civil Rights Act, 25 U.S.C. § 1302, confers the Claims Court jurisdiction over his constitutional claims against the Tribe. However, the Indian Civil Rights Act "does not import duties on the federal government or its employees" and cannot be interpreted as money-mandating for purposes of Tucker Act jurisdiction. *Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006). Finally, we agree with the government that the Claims Court correctly determined that the 1891 Act prohibits claims based on depredations occurring after passage of the Act.

Finally, after briefing, Landreth filed a motion to supplement the record. We normally do not consider material submitted after briefing unless it was previously unavailable. Therefore, Landreth's motion is denied.

CONCLUSION

We have considered Landreth's remaining arguments but find them unpersuasive. For the foregoing reasons, we *affirm* the Claims Court's dismissal of this case.

**AFFIRMED**

COSTS

The parties shall bear their own costs.